**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

SOUTHERN REALTY TRUST HOLDINGS LLC, and SUNRISE REALTY TRUST HOLDINGS I LLC,

*Plaintiffs,*

-against-

ROBERTO CASTRO CONTRERAS,

*Defendant.*

-----------------------------------------------------------------x

Civil Action No. 1:26-cv-04240-RA

**VERIFIED COMPLAINT**

Plaintiffs Southern Realty Trust Holdings LLC ("SRT") and Sunrise Realty Trust Holdings I LLC ("SUNS," together with SRT, "Plaintiffs"), by their attorneys Akerman LLP, as and for their complaint against Defendant Roberto Castro Contreras ("Guarantor" or "Defendant"), allege as follows:

## NATURE OF ACTION

1. This action is brought by Plaintiffs to enforce a Guaranty of Interest and Carry Costs, dated on or about July 31, 2024 (the "Guaranty"), executed by Defendant in connection with a commercial real estate loan transaction.

2. Plaintiffs contend that Defendant "irrevocably and unconditionally" guaranteed the payment and performance of the Guaranteed Obligations, as defined in the Guaranty, as and when due and payable.

3. Plaintiffs seek damages in the amount of at least $5,327,408.48 as of July 10, 2026, plus interest, attorneys' fees, costs, expenses, and such other and further relief as the Court deems just and proper.

## PARTIES AND RELEVANT NON-PARTIES

4. Plaintiff SRT is a Delaware limited liability company. Its sole member is Southern Realty Trust Inc., a Maryland corporation with its principal place of business in Maryland. Accordingly, SRT is a citizen of Maryland for purposes of 28 U.S.C. § 1332.

5. Plaintiff SUNS is a Delaware limited liability company. Its sole member is Sunrise Realty Trust, Inc., a Maryland corporation with its principal place of business in Maryland. Accordingly, SUNS is a citizen of Maryland for purposes of 28 U.S.C. § 1332.

6. Upon information and belief, Defendant Roberto Castro Contreras is an individual citizen of Texas. Defendant is the guarantor of certain obligations relating to the Loan.

7. Upon information and belief, non-party Lex Avenue Hotel, LLC ("Borrower") was the borrower on the Loan, as defined below.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiffs are citizens of Maryland, Defendant is a citizen of Texas, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because this action was removed to this Court from the Supreme Court of the State of New York, County of New York.

10. Venue is also proper because Defendant expressly agreed in the Guaranty to submit to the jurisdiction of this Court and consented to venue for actions arising out of or relating to the Guaranty.

**THE LOAN DOCUMENTS**

11. On July 31, 2024, SRT and Sunrise Realty Trust, Inc. ("SUN," together with SRT, the "Original Lenders") made a loan in the principal amount of $44,000,000.00 to Borrower (the "Loan").

12. The Loan was evidenced by a Promissory Note, dated July 31, 2024, in the original principal amount of $44,000,000.00 (the "Original Note"). A true and correct copy of the Original Note is attached hereto as **Exhibit A**.

13. The Loan was further evidenced by a Loan Agreement, dated as of July 31, 2024 (the "Loan Agreement"). The Loan Agreement, among other things, describes the loan transaction and the various security interests securing the Loan. A true and correct copy of the Loan Agreement is attached hereto as **Exhibit B**.

14. The Loan was secured by, among other things, a Pledge and Security Agreement, dated as of July 31, 2024, executed by LexAv Owner, LLC, the legal and beneficial owner of 100% of Borrower's outstanding limited liability company interests, for the benefit of Original Lenders (the "Pledge Agreement"). A true and correct copy of the Pledge Agreement is attached hereto as **Exhibit C**.

15. The Loan was further secured by, among other things, a Fee and Leasehold Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated as of July 31, 2024, executed by Borrower for the benefit of Original Lenders (the "Deed of Trust'). A true and correct copy of the Deed of Trust is attached hereto as **Exhibit D**.

16. The Note, Loan Agreement, Pledge Agreement, Deed of Trust, Guaranty (as defined below), and all other documents evidencing, securing, or relating to the Loan are sometimes collectively referred to herein as the "Loan Documents."

17. SRT remained a holder of the Loan Documents.

18. By virtue of duly executed and, where applicable, recorded assignment documents, SUNS succeeded to SUN's ownership of the Loan Documents.

19. Pursuant to a Note Splitter and Loan Modification Agreement effective November 27, 2024 (the "Note Splitter"), the Original Note was split into (a) Replacement Promissory Note A-1, effective as of November 27, 2024, in the principal amount of $15,400,000, made by Borrower in favor of SRT, and (b) Replacement Promissory Note A-2, effective as of November 27, 2024, in the principal amount of $28,600,000, made by Borrower in favor of SUNS (collectively, the "Note"). True and correct copies of the assignments are attached as **Exhibit E,** a true and correct copy of the Note Splitter is attached as **Exhibit F**, and true and correct copies of the Note are attached as **Exhibit G**.

20. Plaintiffs are the current holders of the Loan Documents.

## RELEVANT TERMS OF THE NOTE AND LOAN AGREEMENT

21. In relevant part, Article 2 of the Note provides that "[t]he Debt shall without notice become immediately due and payable at the option of Lender, if any payment required in this Note is not paid (a) in accordance with the terms of the Loan Agreement, or (b) on the happening of any other Event of Default."

22. Sections 1.1 and 2.3.2 of the Loan Agreement detail Borrower's debt payment requirements, including Borrower's obligation to make monthly debt service payments and to pay all interest accrued and unpaid, and all other sums due from Borrower under the Loan Documents (the "Debt," as more fully defined in the Loan Agreement).

23. Section 8.1(a) of the Loan Agreement provides that an Event of Default occurs if, among other things, any amount due under the Loan Documents is not paid when due.

24. Section 10.13 of the Loan Agreement provides that Plaintiffs are entitled to all of their expenses, including reasonable attorneys' fees and disbursements, incurred in connection with, among other things, Plaintiffs enforcing their rights under the Loan Documents.

## THE GUARANTY

25. On or about July 31, 2024, Defendant agreed to and entered into the Guaranty. A true and correct copy of the Guaranty is attached hereto as **Exhibit H.**

26. In relevant part, Section 1.1 of the Guaranty provides that "Guarantor hereby irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise. Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor."

27. Section 1.3 of the Guaranty further provides that "[t]his Guaranty is an irrevocable, absolute, continuing guaranty of payment and performance and not a guaranty of collection."

28. Section 1.2 of the Guaranty defines "Guaranteed Obligations" as follows:

> Collectively, the payment in full, after application of all Gross Income from Operations generated by the Property for the applicable period, of all Taxes, Insurance Premiums, Other Charges, Operating Expenses, required Reserve Account deposits, interest due and payable on the Loan, any Projected Interest Shortfall due and payable from Borrower in accordance with Section 7.2.4 of the Loan Agreement, and all other operating expenses to the extent not described above, in each case to the extent necessary to own and operate the Property, and in each case as and when due and payable, whether same are incurred prior to, on or after an Event of Default or prior to or after Lender's exercise of remedies in connection with the Loan, including any foreclosure or deed or assignment in lieu thereof.

29. Section 1.2 of the Guaranty further provides that, "[f]or the avoidance of doubt, Lender shall not be required to demonstrate a loss, liability or other impairment under the Loan in order to enforce Guarantor's obligations under this Guaranty."

30. Section 1.2 of the Guaranty further provides that "[t]he indebtedness guaranteed by Guarantor shall be deemed to be the last indebtedness which remains outstanding under the Loan Documents after the application of payments received from Borrower and the application of proceeds received from the foreclosure of the Security Instrument and other liquidation of any Collateral for the Loan, and Guarantor may not claim or contend so long as any such indebtedness remains outstanding that any payments received by Lender from Borrower or otherwise, or proceeds received by Lender on the liquidation of the Collateral, shall have reduced or discharged any Guarantor's liability or obligations hereunder."

31. Section 1.4 of the Guaranty provides that "The Guaranteed Obligations and the liabilities and obligations of Guarantor to Lender hereunder, shall not be reduced, discharged or released because or by reason of any existing or future offset, claim or defense of Borrower, or any other party, against Lender or against payment of the Guaranteed Obligations, whether such offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise."

32. Section 1.5 of the Guaranty provides that "[i]f all or any part of the Guaranteed Obligations shall not be paid when due, whether at demand, maturity, acceleration or otherwise, Guarantor shall, immediately upon demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, all such notices being hereby waived by Guarantor pay in lawful money of the United States of America, the amount due on the Guaranteed Obligations to Lender at Lender's address as set forth herein."

33. Section 1.10 of the Guaranty provides that, "In the event that Guarantor should breach or fail to timely perform any provisions of this Guaranty, Guarantor shall, immediately

upon demand by Lender, pay to Lender (a) the applicable Guaranteed Obligations and (b) all costs and expenses (including court costs and attorneys' fees and costs) incurred by Lender or its successors or assigns in the enforcement hereof or the preservation of Lender's rights hereunder, in each case together with interest thereon at the Default Rate from the date requested by Lender until the date of payment to Lender."

34. Section 6.3 of the Guaranty provides that the Guaranty is governed by New York law.

35. In Section 6.12 of the Guaranty, Defendant knowingly and voluntarily waived any right to trial by jury with respect to disputes arising out of the Guaranty and the Loan Documents.

**BORROWERS' DEFAULT**

36. Borrower defaulted under the Loan by, among other things, failing to pay Plaintiffs all amounts when due on at least the November 10, 2025 Payment Date through present (collectively, the "Events of Default").

37. Borrower's Events of Default include, but are not limited to, Borrower's failure to pay interest payable under the Loan Documents at the Interest Rate or the Default Rate and to pay the Projected Interest Shortfall (the "Carry Shortfall Amount").

38. By reason of the Events of Default, Borrower failed to pay certain of the Guaranteed Obligations, as defined in the Guaranty, including, among other things, interest payable under the Loan Documents and various carrying costs associated with the Property (including taxes, operating expenses, and other amounts).

39. On December 16, 2025, Plaintiffs provided notice to Borrowers and Defendant that, among other things, Plaintiffs had accelerated the Loan as a result of Borrower's various Events of Default (the "Acceleration Notice"). A true and correct copy of the Acceleration Notice is attached hereto as **Exhibit I**.

40. Pursuant to Sections 1.1 and 1.2 of the Guaranty, Defendant is liable for the payment of, among other things, taxes, insurance premiums, operating expenses, interest due and payable on the Loan, projected interest shortfalls, and other expenses necessary to own and operate the Property to the extent such amounts constitute Guaranteed Obligations under the Guaranty.

41. As a result of Borrower's defaults and Defendant's failure to honor the Guaranty, Plaintiffs have sustained damages consisting of unpaid property taxes, interest, servicing fees, late fees, net carry costs, and other amounts recoverable under the Guaranty.

42. Moreover, the Guaranty provides that, upon Defendant's breach or failure to timely to perform any provision of the Guaranty, Defendant shall pay to Lender all costs and expenses, including court costs and attorneys' fees and costs, incurred in enforcement of the Guaranty or preservation of Lender's rights thereunder, together with interest at the Default Rate.

## FORECLOSURE SALE

43. As a result of the Events of Default, Plaintiffs appointed James E. Rogers as substitute trustee (the "Substitute Trustee"), pursuant to the Deed of Trust.

44. By letter dated February 5, 2026, Plaintiffs sent a Foreclosure Notice Letter (the "Foreclosure Letter") to Borrowers and Guarantor, informing them that Plaintiffs had exercised its option to foreclose on the Property.

45. Attached to the Foreclosure Letter was a Notice of Substitute Trustee's Sale ("Foreclosure Notice"), providing notice that the Substitute Trustee would sell the Property pursuant to the Deed of Trust and the laws of the state of Texas at a public foreclosure sale at the Bexar County Courthouse on March 3, 2026.

46. The Foreclosure Notice was posted and filed according to the requirements of the Deed of Trust and Texas Property Code Section 51.002.

47. On March 3, 2026, the Property was sold at the noticed foreclosure sale to Lenders pursuant to a credit bid of $40,584,215.

48. The Substitute Trustee accordingly conveyed the Property to Lenders and delivered a Substitute Trustee's Deed dated March 3, 2026, which was recorded with the Bexar County Clerk on March 9, 2026. The Property was subsequently transferred to an affiliate of Lenders.

**GUARANTOR DEMAND AND AMOUNTS OWING**

49. By letter dated March 30, 2026, Plaintiffs demanded that Guarantor pay all due and owing Guaranteed Obligations. A true and correct copy of Plaintiffs' March 30, 2026 demand upon Defendant is attached hereto as **Exhibit J**.

50. Defendant did not repay the Guaranteed Obligations despite Plaintiffs' demand for payment.

51. As of July 10, 2026, the amounts due under the Guaranty totaled **$5,327,408.48**, comprised of the following:

| | | |
|---|---|---|
| a. | Interest and Default Interest through March 3, 2026: | $2,415,825.47 |
| b. | Servicing Fees | $10,500.00 |
| c. | Late Fees | $49,063.04 |
| d. | Default Interest on above amounts through July 10, 2026: | $141,681.61 |
| e. | 2025 Property Taxes | $1,936,379.32 |
| f. | Default Interest on 2025 Property Taxes | $10,230.54 |
| g. | 2026 Property Taxes (expected) | $763,728.51 |
| **TOTAL AMOUNT OF GUARANTEED OBLIGATIONS** | | **$5,327,408.48** |

52. A detailed calculation of the amounts due under the Guaranty is attached hereto as **Exhibit K.**

53. Plaintiffs anticipate that the amount owed by Defendant will grow during the pendency of this matter as Plaintiffs continue to incur legal fees. Plaintiffs will provide an accounting of their reasonable attorneys' fees, costs, expenses, and disbursements incurred in enforcing the Guaranty and preserving their rights thereunder before final judgment.

54. There is currently $373,619.57 in available cash to fund property operating shortfalls and other fees. It is anticipated that this available cash will be required to fund property-related expenses beyond those set forth above. Plaintiffs will provide a final accounting before final judgment.

**FIRST CAUSE OF ACTION**
**(Breach of Guaranty)**

55. Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

56. The Guaranty is a valid and enforceable agreement.

57. Plaintiffs are the current holders of the Loan Documents and are entitled to enforce the Guaranty.

58. Defendant agreed under the Guaranty to irrevocably and unconditionally pay the Guaranteed Obligations as and when due and payable.

59. Borrower failed to pay Guaranteed Obligations due under the Guaranty, including interest, taxes, operating expenses, and other carry costs required by the Loan Documents.

60. Plaintiffs demanded payment from Defendant of all due and owing Guaranteed Obligations.

61. Defendant failed to pay the Guaranteed Obligations despite demand, in breach of the Guaranty.

62. By reason of the foregoing, Defendant is liable to Plaintiffs for the amounts due under the Guaranty, including at least $5,327,408.48 as of July 10, 2026, plus interest, attorneys' fees, costs, expenses, and such other amounts as may accrue through judgment.

**WHEREFORE**, Plaintiffs demand judgment against Defendant Roberto Castro Contreras as follows:

1. Awarding Plaintiffs damages in an amount of at least $5,327,408.48 as of July 10, 2026, plus interest and additional amounts accruing under the Guaranty through the date of judgment;

2. Awarding Plaintiffs their reasonable attorneys' fees, costs, expenses, and disbursements incurred in enforcing the Guaranty and preserving their rights thereunder;

3. Awarding pre-judgment and post-judgment interest at the rate(s) provided by the Guaranty, the Loan Documents, and/or applicable law; and

4. Awarding such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 10, 2026

**AKERMAN LLP**

By: /s/ Mark S. Lichtenstein
Mark S. Lichtenstein, Esq.
Keith Blackman, Esq.
1251 Avenue of the Americas, 37th Floor
New York, NY 10020
Tel. No.: (212) 880-3800
E-mail: mark.lichtenstein@akerman.com
E-mail: keith.blackman@akerman.com

*Attorneys for Plaintiffs Southern Realty Trust Holdings LLC and Sunrise Realty Trust Holdings I LLC*

**VERIFICATION**

STATE OF FLORIDA
)ss.:
COUNTY OF PALM BEACH

Brian H. Sedrish, being duly sworn, deposes and says:

I am an Authorized Signatory for Plaintiffs Southern Realty Trust Holdings LLC ("***SRT***") and Sunrise Realty Trust Holdings I LLC ("***SUNS***," together with SRT, "***Plaintiffs***"). As such, I am authorized to act on behalf of Plaintiffs. I have read the annexed Complaint, know the contents thereof and the same are true to my knowledge, except as to those matters which are stated to be alleged upon information and belief, and as to those matters, I believe them to be true. The source of my knowledge is the files and business records of Plaintiffs. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 9, 2026.

B.H. Sedrish
Brian H. Sedrish

STATE OF FLORIDA
)ss.:
COUNTY OF PALM BEACH

On the 9th day of July in the year 2026 before me, the undersigned personally appeared personally known to me or proved to me on the basis of satisfactory evidence to the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or person upon behalf of the which the individual acted, executed the instrument in the City of Palm Beach State of Florida

NICOLE ANN BAMBACH
MY COMMISSION #HH348143
EXPIRES: JAN 10, 2027
Bonded through 1st State Insurance

Notary Public