# EXHIBIT H

# GUARANTY OF INTEREST AND CARRY COSTS

THIS GUARANTY OF INTEREST AND CARRY COSTS (this "**Guaranty**") is made, jointly and severally, as of July 31, 2024, by **ROBERTO CASTRO CONTRERAS**, an individual, having an address at 2506 W. Main, 5th Floor, Houston, Texas 77098 ("**Guarantor**") for the benefit of **SOUTHERN REALTY TRUST HOLDINGS LLC**, a Delaware limited liability company ("**SRH**"), having an address c/o Southern Realty Trust Inc., 2 Wisconsin Circle #700, Chevy Chase, Maryland 20815 and **SUNRISE REALTY TRUST, INC.**, a Maryland corporation ("**SRT**") having an address at c/o SOUTHERN REALTY TRUST HOLDINGS LLC., 525 Okeechobee Blvd., Suite 1650, West Palm Beach, FL 33401, whereas SRT and SRH, individually and/or collectively as the context may require, together with their respective successors and assigns, the "**Lender**").

## RECITALS:

A. Pursuant to that certain Promissory Note, dated of even date herewith, executed by **LEX AVENUE HOTEL, LLC**, a Delaware limited liability company (together with its permitted successors and assigns, "**Borrower**") and payable to the order of Lender in the maximum principal amount of up to **Forty Million and No/100 Dollars ($40,000,000.00)** (as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Note**"), Borrower has become indebted, and may from time to time be further indebted, to Lender with respect to a loan ("**Loan**") made pursuant to that certain Loan Agreement, of even date herewith between Borrower and Lender (as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Loan Agreement**"), which Loan is secured by, among other things, that certain Fee and Leasehold Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing of even date herewith, made by Borrower for the benefit of Lender (as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Security Instrument**"), encumbering the land and improvements thereon described on Exhibit A to the Security Instrument (the "**Property**"), and is further evidenced, secured or governed by other instruments and documents executed in connection with the Loan (together with the Note, the Loan Agreement and Security Instrument, collectively, the "**Loan Documents**").

B. Lender is not willing to make the Loan, or otherwise extend credit, to Borrower unless Guarantor unconditionally guarantees payment and performance to Lender of the Guaranteed Obligations (as herein defined).

C. Guarantor is the owner of a direct or indirect interest in Borrower, and Guarantor will directly benefit from Lender's making the Loan to Borrower.

D. All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Agreement.

NOW, THEREFORE, as an inducement to Lender to make the Loan to Borrower, and to extend such additional credit as Lender may from time to time extend under the Loan Documents, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

## ARTICLE 1

## NATURE AND SCOPE OF GUARANTY

Section 1.1 **Guaranty of Guaranteed Obligations**. Guarantor hereby irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise. Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor.

Section 1.2 **Definition of Guaranteed Obligations**. As used herein, the term "**Guaranteed Obligations**" means, collectively, the payment in full, after application of all Gross Income from Operations generated by the Property for the applicable period, of all Taxes, Insurance Premiums, Other Charges, Operating Expenses, required Reserve Account deposits, interest due and payable on the Loan, any Projected Interest Shortfall due and payable from Borrower in accordance with Section 7.2.4 of the Loan Agreement, and all other operating expenses to the extent not described above, in each case to the extent necessary to own and operate the Property, and in each case as and when due and payable, whether same are incurred prior to, on or after an Event of Default or prior to or after Lender's exercise of remedies in connection with the Loan, including any foreclosure or deed or assignment in lieu thereof. For the avoidance of doubt, Lender shall not be required to demonstrate a loss, liability or other impairment under the Loan in order to enforce Guarantor's obligations under this Guaranty. The indebtedness guaranteed by Guarantor hereunder shall be deemed to be the last indebtedness which remains outstanding under the Loan Documents after the application of payments received from Borrower and the application of proceeds received from the foreclosure of the Security Instrument and other liquidation of any Collateral for the Loan, and Guarantor may not claim or contend so long as any such indebtedness remains outstanding that any payments received by Lender from Borrower or otherwise, or proceeds received by Lender on the liquidation of the Collateral, shall have reduced or discharged any Guarantor's liability or obligations hereunder. Notwithstanding anything to the contrary in this Guaranty or in any of the other Loan Documents, Lender shall not be deemed to have waived any right which Lender may have under Section 506(a), 506(b), 1111(b) or any other provisions of the U.S. Bankruptcy Code to file a claim for the full amount of the Debt secured by the Security Instrument or to require that all collateral shall continue to secure all of the Obligations in accordance with the Loan Documents. Guarantor expressly waives any defense or benefits arising out of any voluntary or involuntary filing by or on behalf of Borrower for protection under any federal or state bankruptcy, insolvency, or debtor relief laws, including without limitation under Sections 364 or 1111(b)(2) of the Bankruptcy Code.

Section 1.3 **Nature of Guaranty**. This Guaranty is an irrevocable, absolute, continuing guaranty of payment and performance and not a guaranty of collection. This Guaranty may not be revoked by Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by Guarantor and after (as to any Guarantor that is a natural person) such Guarantor's death (in which event this Guaranty shall be binding upon such Guarantor's estate and such Guarantor's legal representatives and heirs). The fact that at any time or from time to time the Guaranteed Obligations may be increased or reduced shall not release

or discharge the obligation of any Guarantor to Lender with respect to the Guaranteed Obligations. This Guaranty may be enforced by Lender and any subsequent holder of the Note and shall not be discharged by the assignment or negotiation of all or part of the Note.

Section 1.4 **Guaranteed Obligations Not Reduced by Offset**. The Guaranteed Obligations and the liabilities and obligations of Guarantor to Lender hereunder, shall not be reduced, discharged or released because or by reason of any existing or future offset, claim or defense of Borrower, or any other party, against Lender or against payment of the Guaranteed Obligations, whether such offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise.

Section 1.5 **Payment By Guarantor**. If all or any part of the Guaranteed Obligations shall not be paid when due, whether at demand, maturity, acceleration or otherwise, Guarantor shall, immediately upon demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, all such notices being hereby waived by Guarantor pay in lawful money of the United States of America, the amount due on the Guaranteed Obligations to Lender at Lender's address as set forth herein. Such demand(s) may be made at any time coincident with or after the time for payment of all or part of the Guaranteed Obligations, and may be made from time to time with respect to the same or different items of Guaranteed Obligations. Such demand shall be deemed made, given and received in accordance with the notice provisions hereof.

Section 1.7 **No Duty To Pursue Others**. It shall not be necessary for Lender (and Guarantor hereby waives any rights which such Guarantor may have to require Lender), in order to enforce the obligations of such Guarantor hereunder, first to (a) institute suit or exhaust its remedies against Borrower, any other Guarantor, or others liable on the Loan or the Guaranteed Obligations or any other Person, (b) enforce Lender's rights against any other Guarantor or any collateral which shall ever have been given to secure the Loan, (c) enforce Lender's rights against any other guarantors of the Guaranteed Obligations, (d) join Borrower, any other Guarantor, or any others liable on the Guaranteed Obligations in any action seeking to enforce this Guaranty, (e) exhaust any remedies available to Lender against any collateral which shall ever have been given to secure the Loan, or (f) resort to any other means of obtaining payment of the Guaranteed Obligations. Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations.

Section 1.8 **Waivers**. Guarantor agrees to the provisions of the Loan Documents, and hereby waives to the fullest extent now or hereafter not prohibited by applicable law (I) notice of (a) any loans or advances made by Lender to Borrower, (b) acceptance of this Guaranty, (c) any amendment or extension of the Note, the Loan Agreement or any other Loan Document, (d) the execution and delivery by Borrower and Lender of any other loan or credit agreement or of Borrower's execution and delivery of any promissory notes or other documents arising under the Loan Documents or in connection with the Property, (e) the occurrence of (X) any breach by Borrower of any of the terms or conditions of the Loan Agreement or any other Loan Documents, or (Y) an Event of Default, (f) Lender's transfer or disposition of the Guaranteed Obligations, or any part thereof, (g) sale or foreclosure (or posting or advertising for sale or foreclosure) of any collateral for the Guaranteed Obligations, (h) protest, proof of non-payment or default by

Borrower, and (i) any other action at any time taken or omitted by Lender, and, generally, all demands and notices of every kind in connection with this Guaranty, the Loan Documents, any documents or agreements evidencing, securing or relating to any of the Guaranteed Obligations and/or the obligations hereby guaranteed, (II) all suretyship defenses and defenses in the nature thereof, (III) any right or claim of right to cause a marshalling of the assets of Borrower or of any collateral for the Loan, or to cause Lender to proceed against any of the other security for the Guaranteed Obligations or the Obligations of Borrower before proceeding under this Guaranty against Guarantor, or, if there shall be more than one Guarantor, to require Lender to proceed against any other Guarantor in any particular order, (IV) the right to assert a counterclaim, other than a mandatory or compulsive counterclaim, in any action or proceeding brought against or by Guarantor, (V) any defense that may arise by reason of the incapacity, lack of authority, death or disability of any other person or persons or the failure of Lender to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other person or persons, (VI) any defense based upon an election of remedies by Lender, (VII) any duty on the part of Lender to disclose to Guarantor any facts Lender may now or hereafter know about Borrower, any Tenant, or the Property, regardless of whether Lender has reason to believe that any such facts materially increase the risk beyond that which Guarantor intend to assume or has reason to believe that such facts are unknown to Guarantor or has a reasonable opportunity to communicate such facts to Guarantor, it being understood and agreed that each Guarantor is fully responsible for being and keeping informed of the financial condition of Borrower, any Tenant or of the condition of the Property and of any and all circumstances bearing on the risk that liability may be incurred by Guarantor hereunder; (VIII) any lack of notice of disposition or of manner of disposition of any collateral for the Loan, (IX) any invalidity, irregularity or unenforceability, in whole or in part, of any one or more of the Loan Documents, (X) any lack of commercial reasonableness in dealing with the collateral for the Loan, (XI) any deficiencies in the collateral for the Loan or any deficiency in the ability of Lender to collect or to obtain performance from any persons or entities now or hereafter liable for the payment and performance of any obligation hereby guaranteed, (XII) an assertion or claim that the automatic stay provided by 11 U.S.C. §362 (arising upon the voluntary or involuntary bankruptcy proceeding of Borrower) or any other stay provided under any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable, shall operate or be interpreted to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any of its rights, whether now or hereafter required, which Lender may have against any Guarantor or the collateral for the Loan, and (XIII) any modifications of the Loan Documents or any obligation of Borrower relating to the Loan by operation of law or by action of any court, whether pursuant to the Bankruptcy Code, or any other debtor relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, or otherwise. Guarantor hereby irrevocably waives reliance on any anti-deficiency statute, through subrogation or otherwise, and any such statute shall in no way affect or impair Guarantor's obligations and liabilities hereunder.

Section 1.9 **No Impairment**. The liability of Guarantor hereunder shall in no way be limited, expanded or impaired by, and Guarantor hereby assents to and agrees to be bound by, any amendment or modification of the provisions of the Loan Documents to or with Lender by Borrower or any other Guarantor or any person who succeeds Borrower as owner of the Property. In addition, the liability of Guarantor under this Guaranty and the other Loan Documents shall in no way be limited, expanded or impaired by:

A. any acceleration of the Loan or any extensions of time for performance required by any of the Loan Documents;

B. any amendment to or modification of any of the Loan Documents;

C. any sale or assignment of the Loan or any sale, assignment or foreclosure of the Security Instrument or any sale, transfer or exchange of all or part of the Property;

D. any exculpatory, or nonrecourse, or limited recourse, provision in any of the Loan Documents limiting Lender’s recourse to the Property encumbered by the Security Instrument or to any other property or limiting Lender’s rights to a deficiency judgment against Borrower or any other Person;

E. the accuracy or inaccuracy of the representations and warranties made by or on behalf of any Guarantor herein or by or on behalf of Borrower, or any Affiliate or successor of Borrower in any of the Loan Documents;

F. the release of Borrower, any Affiliate or successor of Borrower or of any other Person from performance or observance of any of the agreements, covenants, terms or conditions contained in any of the Loan Documents by operation of law, Lender’s voluntary act or otherwise;

G. the filing of any bankruptcy or reorganization proceeding by or against Borrower, any Affiliate or successor of Borrower or any subsequent owner of the Property;

H. the release or substitution in whole or in part of any collateral or security for the Obligations;

I. Lender’s failure to record the Security Instrument or file any UCC financing statements, or Lender’s improper recording or filing of any thereof, or Lender’s failure to otherwise perfect, protect, secure, or insure any security interest or lien given as security for the Obligations;

J. the release of any other party now or hereafter liable upon or in respect of this Guaranty or any of the other Loan Documents;

K. the invalidity or unenforceability of all or any portion of any of the Loan Documents as to Borrower or any other Person;

L. any change in the composition of Borrower, including, without limitation, the withdrawal or removal of the beneficial owner from any current or future position of ownership, management or control of Borrower; or

M. the taking or failure to take any action of any type whatsoever.

Any of the foregoing may be accomplished with or without notice to Borrower or any Guarantor and with or without consideration.

Section 1.10 **Payment**. In the event that Guarantor should breach or fail to timely perform any provisions of this Guaranty, Guarantor shall, immediately upon demand by Lender, pay to Lender (a) the applicable Guaranteed Obligations and (b) all costs and expenses (including court costs and attorneys' fees and costs) incurred by Lender or its successors or assigns in the enforcement hereof or the preservation of Lender's rights hereunder, in each case together with interest thereon at the Default Rate from the date requested by Lender until the date of payment to Lender. The covenant contained in this Section 1.9 shall survive the payment and performance of the Guaranteed Obligations.

Section 1.11 **Effect of Bankruptcy**. In the event that, pursuant to any insolvency, bankruptcy, reorganization, receivership or other debtor relief law, or any judgment, order or decision thereunder, Lender must rescind or restore any payment, or any part thereof, received by Lender in satisfaction of the Guaranteed Obligations, as set forth herein, any prior release or discharge from the terms of this Guaranty given to Guarantor by Lender shall be without effect, and this Guaranty shall remain (or shall be reinstated to be) in full force and effect. It is the intention of Borrower and Guarantor that Guarantor's obligations hereunder shall not be discharged except by Guarantor's performance of such obligations and then only to the extent of such performance.

Section 1.12 **Subordination and Waiver of Subrogation, Reimbursement and Contribution**. Notwithstanding anything to the contrary contained in this Guaranty, until the Loan is indefeasibly repaid in full, each Guarantor hereby unconditionally and irrevocably waives, releases and abrogates any and all rights it may now or hereafter have under any agreement, at law or in equity (including, without limitation, any law subrogating Guarantor to the rights of Lender), to assert any claim against or seek contribution, indemnification or any other form of reimbursement from Borrower, any other Guarantor or any other party liable for payment of any or all of the Guaranteed Obligations for any payment made by Guarantor under or in connection with this Guaranty or otherwise.

Section 1.13 **Delay Not Waiver**. No delay on Lender's part in exercising any right, power or privilege hereunder or under any of the Loan Documents shall operate as a waiver of any such privilege, power or right. No waiver by Lender in any instance shall constitute a waiver in any other instance.

Section 1.14 **Borrower/Guarantor**. The term "Borrower" or "Guarantor" as used herein shall include any new or successor corporation, association, partnership (general or limited), limited liability company, joint venture, trust or other individual or organization formed as a result of any merger, reorganization, sale, transfer, devise, gift or bequest of Borrower or any Guarantor, as the case may be, or any interest in Borrower or any Guarantor, as the case may be.

Section 1.15 **Survival**. This Guaranty shall survive the exercise of remedies following an Event of Default under the Loan Agreement or the other Loan Documents, including but not limited to a foreclosure of the Security Instrument and/or any exercise of remedies against any other collateral given in connection with the Loan by Lender, and shall remain in full force and effect until all of the Obligations and other sums due under the Loan Agreement and the other Loan Documents have been satisfied and indefeasibly paid in full to Lender.

## ARTICLE 2

## EVENTS AND CIRCUMSTANCES NOT REDUCING OR DISCHARGING GUARANTOR'S OBLIGATIONS

Each Guarantor hereby consents and agrees to each of the following, and agrees that such Guarantor's obligations under this Guaranty shall not be released, diminished, impaired, reduced or adversely affected by any of the following, and waives any common law, equitable, statutory or other rights (including without limitation rights to notice) which such Guarantor might otherwise have as a result of or in connection with any of the following:

Section 2.1 **Modifications/Sales**. Any renewal, extension, increase, modification, alteration or rearrangement of all or any part of the Guaranteed Obligations, the Note, the Security Instrument, the Loan Agreement, the other Loan Documents or any other document, instrument, contract or understanding between Borrower and Lender or any other parties pertaining to the Guaranteed Obligations, or any sale, assignment or foreclosure of the Note, the Loan Agreement, the Security Instrument, or any other Loan Documents or any sale or transfer of the Property, or any failure of Lender to notify Guarantor of any such action, except as otherwise provided in Section 1.15 herein.

Section 2.2 **Adjustment**. Any adjustment, indulgence, forbearance or compromise that might be granted or given by Lender to Borrower or any Guarantor.

Section 2.3 **Condition of Borrower or Guarantor**. The insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution or lack of power of Borrower, any Guarantor or any other Person at any time liable for the payment of all or part of the Guaranteed Obligations; or any dissolution of Borrower or any Guarantor, or any sale, lease or transfer of any or all of the assets of Borrower or any Guarantor, or any changes in the shareholders, partners or members, as applicable, of Borrower or any Guarantor; or any reorganization of Borrower or any Guarantor.

Section 2.4 **Intentionally Omitted**.

Section 2.5 **Release of Obligors**. Any full or partial release of the liability of Borrower for the Guaranteed Obligations, or any part thereof, or of any co-guarantors, or any other Person now or hereafter liable, whether directly or indirectly, jointly, severally, or jointly and severally, to pay, perform, guarantee or assure the payment of the Guaranteed Obligations, or any part thereof, it being recognized, acknowledged and agreed by each Guarantor that Guarantor may be required to pay the Guaranteed Obligations in full without assistance or support from any other Person, and such Guarantor has not been induced to enter into this Guaranty on the basis of a contemplation, belief, understanding or agreement that other Persons (including Borrower) will be liable to pay or perform the Guaranteed Obligations, or that Lender will look to other Persons (including Borrower) to pay or perform the Guaranteed Obligations.

Section 2.6 **Other Collateral**. The taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for all or any part of the Guaranteed Obligations.

Section 2.7 **Release of Collateral**. Any release, surrender, exchange, subordination, deterioration, waste, loss or impairment (including without limitation negligent, willful, unreasonable or unjustifiable impairment) of any collateral, property or security at any time existing in connection with, or assuring or securing payment of, all or any part of the Guaranteed Obligations.

Section 2.8 **Care and Diligence**. The failure of Lender or any other party to exercise diligence or reasonable care in the preservation, protection, enforcement, sale or other handling or treatment of all or any part of such collateral, property or security, including but not limited to any neglect, delay, omission, failure or refusal of Lender (a) to take or prosecute any action for the collection of any of the Guaranteed Obligations or (b) to foreclose, or initiate any action to foreclose, or, once commenced, prosecute to completion any action to foreclose upon any security therefor, or (c) to take or prosecute any action in connection with any instrument or agreement evidencing or securing all or any part of the Guaranteed Obligations.

Section 2.9 **Unenforceability**. The fact that any collateral, security, security interest or lien contemplated or intended to be given, created or granted as security for the repayment of the Guaranteed Obligations, or any part thereof, shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other security interest or lien, it being recognized and agreed by each Guarantor that Guarantor are not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectability or value of any of the collateral for the Guaranteed Obligations.

Section 2.10 **Representation**. The accuracy or inaccuracy of the representations and warranties made by Guarantor herein or by Borrower in any of the Loan Documents.

Section 2.11 **Offset**. The Note, the Guaranteed Obligations and the liabilities and obligations of Guarantor to Lender hereunder shall not be reduced, discharged or released by reason of any existing or future right of offset, claim or defense of Borrower against Lender, or any other Person, or against payment of the Guaranteed Obligations, whether such right of offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise.

Section 2.12 **Merger**. The reorganization, merger or consolidation of Borrower or any Guarantor into or with any Person.

Section 2.13 **Preference**. Any payment by Borrower to Lender is held to constitute a preference under bankruptcy laws, or for any reason Lender is required to refund such payment or pay such amount to Borrower or to any other Person.

Section 2.14 **Other Actions Taken or Omitted**. Any other action taken or omitted to be taken with respect to the Loan Documents, the Guaranteed Obligations, or the security and collateral therefor, whether or not such action or omission prejudices Guarantor or increases the likelihood that Guarantor will be required to pay the Guaranteed Obligations pursuant to the terms hereof, it being the unambiguous and unequivocal intention of each Guarantor that Guarantor shall be obligated to pay the Guaranteed Obligations when due, notwithstanding any occurrence, circumstance, event, action, or omission whatsoever, whether contemplated or uncontemplated,

and whether or not otherwise or particularly described herein, which obligation shall be deemed satisfied only upon the full and final payment and satisfaction of the Guaranteed Obligations.

Section 2.15 **Ability to Enforce Certain Environmental Claims**. Nothing contained in this Guaranty shall prevent or in any way diminish or interfere with any rights or remedies, including, without limitation, the right to contribution, which Lender may have against Borrower, Guarantor or any other party under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (codified at Title 42 U.S.C. §9601 et seq.) as it may be amended from time to time, or any other applicable federal, state or local laws, all such rights being hereby expressly reserved.

## ARTICLE 3

## REPRESENTATIONS AND WARRANTIES

To induce Lender to enter into the Loan Documents and extend credit to Borrower, each Guarantor represents and warrants to Lender as follows:

Section 3.1 **Benefit**. Each Guarantor is an Affiliate of Borrower, is the owner of a direct or indirect interest in Borrower, and has received, or will receive, direct or indirect benefit from the making of this Guaranty with respect to the Guaranteed Obligations.

Section 3.2 **Familiarity and Reliance**. Each Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of the Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment of the Note or Guaranteed Obligations; however, no Guarantor is relying on such financial condition or the collateral as an inducement to enter into this Guaranty.

Section 3.3 **No Representation By Lender**. Neither Lender nor any other party has made any representation, warranty or statement to any Guarantor in order to induce the Guarantor to execute this Guaranty.

Section 3.4 **Guarantor's Financial Condition**. As of the date hereof, and after giving effect to this Guaranty and the contingent obligation evidenced hereby, each Guarantor is solvent, and has assets which, fairly valued, exceed its obligations, liabilities (including contingent liabilities) and debts, and has and will have property and assets sufficient to satisfy and repay its obligations and liabilities, including the Guaranteed Obligations. In addition, true and complete copies of the financial statements of each Guarantor have been delivered to Lender and each of the same are true, accurate and complete in all material respects and fairly present each Guarantor's financial condition as of the dates thereof and no material and adverse change has occurred in any Guarantor's financial condition or business since the respective dates thereof; and each financial statement of Guarantor submitted in the future shall be true, accurate and complete in all material respects and shall fairly present Guarantor's financial condition as of the dates thereof.

Section 3.5 **Legality**. The execution, delivery and performance by each Guarantor of this Guaranty and the consummation of the transactions contemplated hereunder do not, and will

not, contravene or conflict with any law, statute or regulation whatsoever to which such Guarantor is subject or constitute a default (or an event which with notice or lapse of time or both would constitute a default) under, or result in the breach of, any indenture, mortgage, deed of trust, charge, lien, or any contract, agreement or other instrument to which such Guarantor is a party or which may be applicable to such Guarantor. This Guaranty is a legal and binding obligation of each Guarantor and is enforceable in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to the enforcement of creditors' rights.

Section 3.6 **No Violation**. The payment and performance by each Guarantor of such Guarantor's obligations under the Loan Agreement and this Guaranty do not and shall not constitute a violation of any law, order, regulation, contract or agreement to which such Guarantor is a party or by which such Guarantor or such Guarantor's property may be bound.

Section 3.7 **No Litigation**. There is no material litigation now pending or, to the best of Guarantor's knowledge threatened in writing, against Guarantor which, if adversely decided would materially impair the ability of Guarantor to pay and perform Guarantor's obligations under the Loan Agreement or this Guaranty. There is no litigation (whether or not material) pending, or threatened in writing, against Guarantor in which the amount in controversy exceeds $125,000.00.

Section 3.8 **Material Economic Benefit**. The granting of the Loan to Borrower will constitute a material economic benefit to Guarantor.

Section 3.9 **Enforceability**. The Loan Documents are not subject to any right of recession, set-off, counterclaim or defense by any Guarantor, including the defense of usury, nor would the operation of any of the terms of the Loan Documents, or the exercise of any right thereunder, render the Loan Documents unenforceable (subject to principles of equity and bankruptcy, insolvency and other laws generally affecting creditors' rights and the enforcement of debtors' obligations), and no Guarantor has asserted any right of recession, set-off, counterclaim or defense with respect thereto.

Section 3.10 **Filing of Returns; Payment of Taxes**. Each Guarantor has filed, or caused to be filed, all federal, state, local and foreign Tax returns, reports and other Tax-related documents required to be filed by it and has paid all Taxes payable by it that have become due, other than those not yet delinquent and except for those being contested in good faith (in accordance with the terms of this Agreement and the other Loan Documents) by appropriate proceedings for which adequate reserves have been established on its financial statements.

Section 3.11 **Intentionally Omitted**.

Section 3.12 **Survival**. All representations and warranties made by Guarantor herein shall survive the execution hereof.

## ARTICLE 4

## SUBORDINATION OF CERTAIN INDEBTEDNESS

Section 4.1 **Subordination of All Guarantor Claims**. As used herein, the term "**Guarantor Claims**" shall mean all debts and liabilities of (i) Borrower to any Guarantor, or (ii)

a Guarantor to any other Guarantor, in either case whether such debts and liabilities now exist or are hereafter incurred or arise, and whether the obligations of Borrower or such Guarantor-thereon be direct, contingent, primary, secondary, several, joint and several, or otherwise, and irrespective of whether such debts or liabilities be evidenced by note, contract, open account, or otherwise, and irrespective of the Person or Persons in whose favor such debts or liabilities may, at their inception, have been, or may hereafter be created, or the manner in which they have been or may hereafter be acquired by any Guarantor. The Guarantor Claims shall include without limitation all rights and claims of a Guarantor against Borrower or any other Guarantor (arising as a result of subrogation or otherwise) as a result of such Guarantor's payment of all or a portion of the Guaranteed Obligations. So long as any portion of the Debt or the Guaranteed Obligations remain outstanding, no Guarantor shall receive or collect, directly or indirectly, from Borrower, any other Guarantor or any other Person any amount upon the Guarantor Claims.

Section 4.2 **Claims in Bankruptcy**. In the event of any receivership, bankruptcy, reorganization, arrangement, debtor's relief, or other insolvency proceeding involving any Guarantor as a debtor, Lender shall have the right to prove its claim in any such proceeding so as to establish its rights hereunder and receive directly from the receiver, trustee or other court custodian dividends and payments which would otherwise be payable upon Guarantor Claims. Each Guarantor hereby assigns such dividends and payments to Lender. Should Lender receive, for application against the Guaranteed Obligations, any such dividend or payment which is otherwise payable to any Guarantor, and which, as between Borrower and such Guarantor, shall constitute a credit against the Guarantor Claims, then upon payment to Lender in full of the Guaranteed Obligations, such Guarantor shall become subrogated to the rights of Lender to the extent that such payments to Lender on the Guarantor Claims have contributed toward the liquidation of the Guaranteed Obligations, and such subrogation shall be with respect to that proportion of the Guaranteed Obligations which would have been unpaid if Lender had not received dividends or payments upon the Guarantor Claims.

Section 4.3 **Payments Held in Trust**. Notwithstanding anything to the contrary in this Guaranty, in the event that any Guarantor shall receive any funds, payments, claims or distributions which are prohibited by this Guaranty, such Guarantor agrees to hold in trust for Lender an amount equal to the amount of all funds, payments, claims or distributions so received, and agrees that it shall have absolutely no dominion over the amount of such funds, payments, claims and/or distributions so received except to pay such funds, payments, claims and/or distributions promptly to Lender, and such Guarantor covenants promptly to pay the same to Lender.

Section 4.4 **Liens Subordinate**. Each Guarantor agrees that any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's or any other Guarantor's assets securing payment of the Guarantor Claims shall be and remain inferior and subordinate to any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's or any other Guarantor's assets securing payment of the Guaranteed Obligations, regardless of whether such encumbrances in favor of any Guarantor or Lender presently exist or are hereafter created or attach. Without the prior written consent of Lender, no Guarantor shall (a) exercise or enforce any creditor's rights it may have against Borrower or any other Guarantor, or (b) foreclose, repossess, sequester or otherwise take steps or institute any action or proceedings (judicial or otherwise, including without limitation the commencement of, or the joinder in, any

liquidation, bankruptcy, rearrangement, debtor's relief or insolvency proceeding) to enforce any liens, mortgages, deeds of trust, security interests, collateral rights, judgments or other encumbrances on assets of Borrower or any other Guarantor held by such Guarantor.

## ARTICLE 5

## COVENANTS

Section 5.1 **Prohibited Transactions**. No Guarantor shall, at any time while a default in the payment of the Guaranteed Obligations has occurred and is continuing, either (i) enter into or effectuate any transaction with any Affiliate, including the payment of any dividend or distribution to a shareholder, or the redemption, retirement, purchase or other acquisition for consideration of any stock in such Guarantor or (ii) sell, pledge, mortgage or otherwise transfer to any Person any of such Guarantor's assets, or any interest therein, in either case, which could have the effect of reducing the Net Worth of such Guarantor.

Section 5.2 **Financial Covenants**. Until all of the Obligations and the Guaranteed Obligations have been paid in full, (i) Guarantor shall, at all times maintain, (A) a Net Worth in excess of Thirty-Five Million and No/100 Dollars ($35,000,000.00), and (B) Liquid Assets having a market value in excess of (x) Two Million and No/100 Dollars ($2,000,000.00) for the period commencing on and including the date hereof through and including December 31, 2024 and (y) Four Million and No/100 Dollars ($4,000,000.00) commencing on and including January 1, 2025 and thereafter, (ii) Guarantor shall deliver to Lender within five (5) Business Days of receipt, copies of any default notices received by Guarantor in respect of any Indebtedness of Guarantor, and (iii) Guarantor shall deliver to Lender, concurrently with the delivery of each quarterly or annual financial statement required to be delivered by Guarantor hereunder, a certificate signed by Guarantor setting forth in reasonable detail Guarantor's Net Worth and Liquid Assets, based on such financial statement.

Section 5.3 **Definitions**. As used in this Article 5, "Liquid Assets" and "Net Worth" shall have the meanings set forth in the Guaranty of Recourse Obligations (Unsecured):

## ARTICLE 6

## MISCELLANEOUS

Section 6.1 **Waiver**. No failure to exercise, and no delay in exercising, on the part of Lender, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right. The rights of Lender hereunder shall be in addition to all other rights provided by law. No modification or waiver of any provision of this Guaranty, nor consent to departure therefrom, shall be effective unless in writing and no such consent or waiver shall extend beyond the particular case and purpose involved. No notice or demand given in any case shall constitute a waiver of the right to take other action in the same, similar or other instances without such notice or demand.

Section 6.2 **Notices**. All notices, consents, approvals and requests required or permitted hereunder or under any other Loan Document shall be given in writing and shall be effective for

all purposes if (a) hand delivered, (b) intentionally omitted, (c) expedited prepaid delivery service, either commercial or United States Postal Service, with proof of attempted delivery, or (d) by electronic transmission (email), so long as such notice is also sent via one of the methods set forth in (a) through (c) above within one (1) Business Day of such electronic transmission, addressed as follows (or at such other address and Person as shall be designated from time to time by any party hereto, as the case may be, in a notice to the other parties hereto in the manner provided for in this Section 6.2):

| | |
|---|---|
| Guarantor: | Roberto Castro Contreras<br>c/o DC Partners Management<br>2506 W. Main, 5th Floor<br>Houston, Texas 77098 |
| With a copy to: | Andrews Myers, P.C.<br>1885 St. James Place, 15th Floor<br>Houston, Texas 77056<br>Attention: Patrick Hayes |
| Lender: | Southern Realty Trust Holdings LLC<br>c/o Southern Realty Trust Inc.,<br>2 Wisconsin Circle #700,<br>Chevy Chase, Maryland 20815<br>Attention: General Counsel |
| With a copy to: | Sunrise Realty Trust, Inc.<br>525 Okeechobee Blvd., Suite 1650,<br>West Palm Beach, FL 33401<br>Attention: Stuart Swann |
| With a copy to: | Akerman LLP<br>999 Peachtree Street NE, Suite 1700<br>Atlanta, Georgia 30309<br>Attention: Anne Marie Garavaglia, Esq.<br>Email: annemarie.garavaglia@akerman.com |

A notice shall be deemed to have been given: (a) in the case of hand delivery, at the time of delivery; (b) intentionally omitted; (c) in the case of expedited prepaid delivery, upon the first attempted delivery on a Business Day; and (d) in the case of electronic transmission, as of the date that delivery of any of the methods of delivery set forth in clauses (a) through (c) above is deemed to have been given pursuant to the foregoing. Any failure to deliver a notice by reason of a change of address not given in accordance with this Section 6.2, or any refusal to accept a notice, shall be deemed to have been given when delivery was attempted. Any notice required or permitted to be given by any party hereunder or under any other Loan Document may be given by its respective counsel. Additionally, any notice required or permitted to be given by Lender hereunder or under any other Loan Document may also be given by the Servicer.

Section 6.3 **Governing Law**. **THIS GUARANTY WAS NEGOTIATED IN THE STATE OF NEW YORK, THE LOAN WAS MADE BY LENDER AND ACCEPTED BY BORROWER IN THE STATE OF NEW YORK, AND THE PROCEEDS OF THE LOAN DELIVERED PURSUANT TO THE LOAN AGREEMENT WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE PARTIES IRREVOCABLY AND UNCONDITIONALLY AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS GUARANTY AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA. TO THE FULLEST EXTENT PERMITTED BY LAW, EACH GUARANTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS GUARANTY, AND THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.**

ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST ANY GUARANTOR ARISING OUT OF OR RELATING TO THIS GUARANTY MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT LOCATED IN THE STATE OF NEW YORK, ANY STATE OR FEDERAL COURT LOCATED IN THE COUNTY OF NEW YORK AND EACH GUARANTOR WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND EACH GUARANTOR HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING. EACH GUARANTOR DOES HEREBY DESIGNATE AND APPOINT:

CT CORPORATION SYSTEM
28 LIBERTY STREET, 42ND FLOOR
NY, NY 10005

AS ITS AUTHORIZED AGENT TO ACCEPT AND ACKNOWLEDGE ON ITS BEHALF SERVICE OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY FEDERAL OR STATE COURT, AND AGREES THAT SERVICE OF PROCESS UPON SAID AGENT AT SAID ADDRESS AND NOTICE OF SAID SERVICE MAILED OR DELIVERED TO GUARANTOR IN THE MANNER PROVIDED HEREIN SHALL BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON GUARANTOR IN ANY SUCH SUIT, ACTION OR PROCEEDING INCLUDING WITHOUT LIMITATION THOSE IN THE STATE OF NEW YORK. EACH GUARANTOR (I) SHALL GIVE PROMPT NOTICE TO LENDER OF ANY CHANGED ADDRESS OF ITS AUTHORIZED AGENT HEREUNDER, (II) MAY AT ANY TIME AND FROM TIME TO TIME DESIGNATE A SUBSTITUTE AUTHORIZED AGENT WITH AN OFFICE IN NEW YORK, NEW YORK (WHICH SUBSTITUTE AGENT AND OFFICE SHALL BE

DESIGNATED AS THE PERSON AND ADDRESS FOR SERVICE OF PROCESS), AND (III) SHALL PROMPTLY DESIGNATE SUCH A SUBSTITUTE IF ITS AUTHORIZED AGENT CEASES TO HAVE AN OFFICE IN NEW YORK, NEW YORK OR IS DISSOLVED WITHOUT LEAVING A SUCCESSOR. NOTHING CONTAINED HEREIN SHALL AFFECT THE RIGHT OF LENDER TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST GUARANTOR IN ANY JURISDICTION.

Section 6.4 **Invalid Provisions**. If any provision of this Guaranty is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Guaranty, such provision shall be fully severable and this Guaranty shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Guaranty, and the remaining provisions of this Guaranty shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Guaranty, unless such continued effectiveness of this Guaranty, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

Section 6.5 **Amendments**. This Guaranty may be amended only by an instrument in writing executed by the party or an authorized representative of the party against whom such amendment is sought to be enforced.

Section 6.6 **Parties Bound; Assignment; Joint and Several**. This Guaranty shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, permitted assigns, heirs and legal representatives. Lender may sell, assign, pledge, participate, transfer or delegate, as applicable to one or more Persons all or a portion of its rights and obligations under this Guaranty in connection with any assignment, sale, pledge, participation or transfer of the Loan and the Loan Documents. Any assignee or transferee of Lender shall be entitled to all the benefits afforded to Lender under this Guaranty, no Guarantor shall have the right to delegate, assign or transfer its rights or obligations under this Guaranty without the prior written consent of Lender, and any attempted assignment, delegation or transfer without such consent shall be null and void. The obligations of each Guarantor under this Guaranty shall be joint and several.

Section 6.7 **Headings**. Section headings are for convenience of reference only and shall in no way affect the interpretation of this Guaranty.

Section 6.8 **Recitals**. The recitals and introductory paragraphs hereof are a part hereof, form a basis for this Guaranty and shall be considered prima facie evidence of the facts and documents referred to therein.

Section 6.9 **Counterparts**. To facilitate execution, this Guaranty may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature of, or on behalf of, each party, or that the signature of all Persons required to bind any party, appear on each counterpart. All counterparts shall collectively constitute a single instrument. It shall not be necessary in making proof of this Guaranty to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, each of the parties hereto. Any signature page to any counterpart may be detached from such counterpart without impairing the

legal effect of the signatures thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature pages. This Guaranty may be executed by Portbale Document Forman (PDF) or other form of electronic communication and such form of execution shall be deemed to be an original signature for execution purposes.

Section 6.10 **Rights and Remedies**. If any Guarantor becomes liable for any indebtedness owing by Borrower to Lender, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby and the rights of Lender hereunder shall be cumulative of any and all other rights that Lender may ever have against Guarantor. The exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.

Section 6.11 **Entirety**. **THIS GUARANTY EMBODIES THE FINAL AND ENTIRE AGREEMENT OF GUARANTOR AND LENDER WITH RESPECT TO GUARANTOR'S GUARANTY OF THE GUARANTEED OBLIGATIONS AND SUPERSEDES ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF. THIS GUARANTY IS INTENDED BY GUARANTOR AND LENDER AS A FINAL AND COMPLETE EXPRESSION OF THE TERMS OF THIS GUARANTY, AND NO COURSE OF DEALING AMONG GUARANTOR AND LENDER, NO COURSE OF PERFORMANCE, NO TRADE PRACTICES, AND NO EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OR OTHER EXTRINSIC EVIDENCE OF ANY NATURE SHALL BE USED TO CONTRADICT, VARY, SUPPLEMENT OR MODIFY ANY TERM OF THIS GUARANTY. THERE ARE NO ORAL AGREEMENTS AMONG GUARANTOR AND LENDER.**

Section 6.12 **Waiver of Right To Trial By Jury**. **EACH GUARANTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY, THE NOTE, THE LOAN AGREEMENT, THE SECURITY AGREEMENT, OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY EACH GUARANTOR, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY GUARANTOR.**

Section 6.13 **Cooperation**. Each Guarantor acknowledges that Lender and its successors and assigns may, from time to time, effect a Securitization in accordance with Section 9.1 of the Loan Agreement. Each Guarantor shall, in accordance with Section 9.2 of the Loan Agreement, cooperate with Lender in effecting any such Securitization and shall cooperate to implement all requirements imposed by any Rating Agencies involved in any Securitization. In addition,

Guarantor shall make available to Lender all information concerning their business and operations that Lender may reasonably request. Lender shall be permitted to share all such information with the investment banking firms, Rating Agencies, accounting firms, law firms and other third-party advisory firms involved with the Loan and the Loan Documents or the applicable Securitization. It is understood that the information provided by Guarantor to Lender including any and all financial statements provided to Lender pursuant to Article V hereof, if any, may ultimately be incorporated into the offering documents for the Securitization and thus various investors or potential investors may also see some or all of the information. Lender and all of the aforesaid third-party advisors and professional firms shall be entitled to rely on the information supplied by, or on behalf of, Guarantor in the form as provided by Guarantor. Lender may publicize the existence of the Loan in connection with its marketing for a Securitization or otherwise as part of its business development.

Section 6.14 **Reinstatement in Certain Circumstances**. If at any time any payment of the principal of or interest under the Note or any other amount payable by the Borrower under the Loan Documents is rescinded or must be otherwise restored or returned upon the insolvency, bankruptcy or reorganization of the Borrower or otherwise, Guarantor's obligations hereunder with respect to such payment shall be reinstated as though such payment had been due but not made at such time.

Section 6.15 **Gender; Number; General Definitions**. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, (a) words used in this Guaranty may be used interchangeably in the singular or plural form, (b) any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, (c) the word "Borrower" shall mean "each Borrower and any subsequent owner or owners of the Property or any part thereof or interest therein", (d) the word "Lender" shall mean "Lender and any subsequent holder of the Note", (e) the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Loan Agreement, as amended, restated or otherwise modified", (f) the word "Property" shall include any portion of the Property and any interest therein, and (g) the phrases "attorneys' fees", "legal fees" and "counsel fees" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels, incurred or paid by Lender in protecting its interest in the Property, the Leases and/or the Rents and/or in enforcing its rights hereunder.

Section 6.16 **No Waiver; Time of Essence**. The failure of any party hereto to enforce any right or remedy hereunder, or to promptly enforce any such right or remedy, shall not constitute a waiver thereof nor give rise to any estoppel against such party nor excuse any of the parties hereto from their respective obligations hereunder. Any waiver of such right or remedy must be in writing and signed by the party to be bound. This Guaranty is subject to enforcement at law or in equity, including actions for damages or specific performance. Time is of the essence hereof.

Section 6.17 **Assignments By Lender**. (a) Lender may at its sole cost and expense, without notice to, or consent of, any Guarantor, sell, assign or transfer to or participate with any entity or entities all or any part of the indebtedness evidenced by the Note and secured by the Security Instrument, and each such entity or entities shall have the right to enforce the provisions of this Guaranty and any of the other Loan Documents as fully as Lender, provided that Lender shall continue to have the unimpaired right to enforce the provisions of this Guaranty and any of

the other Loan Documents as to so much of the Loan that Lender has not sold, assigned or transferred. Lender shall give notice to Guarantor of the name, address, telephone number and contact person of any assignee of Lender within a reasonable period of time after the effective date of the assignment, provided, that failure to provide such notice shall in no way affect the validity or effect of the assignment or Guarantor's obligations hereunder. In particular, each Guarantor acknowledges and agrees that Lender and its successors and assigns may (i) sell the Loan, this Guaranty and each of the other Loan Documents to one or more investors as a whole loan in a rated or unrated public offering or private placement, (ii) grant participation interests in the Loan, to one or more investors in a rated or unrated public offering or private placement, (iii) deposit this Guaranty and each of the other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership in the trust assets in a rated or unrated public offering or private placement, or (iv) otherwise sell the Loan or any interest therein to investors in a rated or unrated public offering or private placement.

Section 6.18 **Independent Obligations**. The obligations of the Guarantor under this Guaranty are independent of Borrower's obligations under the Loan Agreement, the Note and the other Loan Documents, and a separate action or actions may be brought and prosecuted against the Guarantor to enforce this Guaranty, irrespective of whether an action is brought against Borrower or whether Borrower is joined in any such action or more successive and/or concurrent actions may be brought hereon against Guarantor either in the same action, if any, brought against Borrower or in separate actions, as often as Lender, in its sole discretion, may deem advisable. Guarantor, on behalf of itself and on behalf of each Person claiming by, through or under each Guarantor, hereby irrevocably and unconditionally waives any right to object to Lender bringing simultaneous actions to (i) recover the Guaranteed Obligations against Borrower under the Loan Agreement, the Note or any other Loan Document, at law or in equity, or (ii) recover any amounts due under this Guaranty.

[THE REMAINDER OF THE PAGE IS INTENTIONALLY BLANK]

IN WITNESS WHEREOF, Guarantor has executed this Guaranty the day and year first above written.

**GUARANTOR:**

Roberto Castro Contreras

CONSENT OF SPOUSE OF GUARANTOR

The undersigned spouse of Roberto Castro Contreras, a Guarantor, hereby consents to the execution of the foregoing Guaranty of Interest and Carry Costs by their spouse and agrees to be bound thereby to the extent of their interest in any assets or property of such Guarantor and further agrees that their joint assets shall be bound thereby and that their claims against such assets are subordinate to any claims of Lender. This consent shall not be construed as an agreement by the undersigned spouse that such spouse's separate property is subject to the claims of Lender arising out of enforcement of this Guaranty.

Martha C. Contreras

Martha Claudia Contreras, an individual