SUSMAN GODFREY L.L.P.
A REGISTERED LIMITED LIABILITY PARTNERSHIP
1000 LOUISIANA
SUITE 5100
HOUSTON, TEXAS 77002
(713) 651-9366
FAX (713) 654-6666
WWW.SUSMANGODFREY.COM

SUITE 1400
1900 AVENUE OF THE STARS
LOS ANGELES, CALIFORNIA 90067-6029
(310) 789-3100

SUITE 3000
401 UNION STREET
SEATTLE, WASHINGTON 98101-2683
(206) 516-3880

ONE MANHATTAN WEST
NEW YORK, NEW YORK 10001-8602
(212) 336-8330

HARRY SUSMAN
DIRECT DIAL (713) 653-7875

E-MAIL HSUSMAN@SUSMANGODFREY.COM

Plaintiffs shall file a response to Defendant's letter motion no later than November 16, 2026.

SO ORDERED.

Hon. Ronnie Abrams
November 9, 2026

November 8, 2026

**VIA ECF**

Hon. Ronnie Abrams
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re: *Southern Realty Trust Holdings LLC, et al. v. Contreras*, Case No. 1:26-cv-04240 (RA)

Dear Judge Abrams:

Defendant Roberto Castro Contreras respectfully submits this letter-motion, pursuant to Rule 1(D) of the Court's Individual Rules and Practices in Civil Cases and Local Civil Rule 7.1(e), requesting: (1) an extension of the November 9, 2026 deadline to complete fact discovery set by the Court's June 26, 2026 Case Management Plan and Scheduling Order (ECF No. 12), and (2) a schedule for expert discovery, which the Scheduling Order left to be determined. *See* ECF No. 12 ¶¶ 7, 9-10. A proposed Revised Scheduling Order is attached as **Exhibit 1**.

This is Defendant's first request for an extension of the fact discovery deadline, and no prior requests for adjournments or extensions have been made. Defendant conferred with Plaintiffs regarding this request during a November 6, 2026 meet

and confer. Plaintiffs stated that they oppose the requested relief because they oppose additional discovery and wish to proceed promptly to summary judgment.

## I. Background

This action arises out of a Guaranty of Interest and Carry Costs (the "Guaranty") executed by Defendant Roberto Castro Contreras in connection with a commercial real estate loan made by Plaintiffs. Plaintiffs commenced this action in New York state court by motion for summary judgment in lieu of complaint under CPLR § 3213, and Defendant removed it to this Court on May 20, 2026. ECF Nos. 1, 11 at 1-2.

The Court entered the Scheduling Order on June 26, 2026, before any complaint had been filed, setting a November 9, 2026 fact discovery deadline. ECF No. 12 ¶ 7. During the initial pretrial conference, the Court directed the parties to meet and confer and attempt to reach agreement on deadlines for interrogatories and depositions. The parties met and conferred on July 6, 2026, and Defendant made clear that he would not agree to forgo depositions. Plaintiffs said they would get back to Defendant regarding possible competing submissions to the Court, but did not.

Plaintiffs filed their Complaint on July 10, 2026, seeking "at least $5,327,408.48"—an amount that differs from the $6,728,313.11 sought in their state-court motion. ECF No. 13 ¶ 51; ECF No. 1. The pleadings did not close until August 21, 2026, less than three months before the fact discovery deadline. ECF Nos. 14, 15.

Defendant reviewed the documents Plaintiffs produced with their initial disclosures and, while settlement discussions were ongoing, informed Plaintiffs they were insufficient for Defendant to evaluate the claimed amount. When Plaintiffs did not adequately supplement, Defendant served requests for production on October 5, 2026, seeking the underlying documents needed to calculate any liability. ECF No. 12 ¶¶ 6, 8(a).

Plaintiffs' responses were not due until November 5, 2026, and the protective order was not entered until that day. ECF Nos. 17, 19. Plaintiffs served their responses and a production on November 5, but objected to and withheld most responsive documents, stating that documents subject to their general objections "will not be produced," without specifying whether any responsive materials were in fact being withheld, as Rule 34(b)(2)(C) requires. Pls.' Objs. & Resps. to Def.'s First RFPs (**Exhibit 2**), Gen. Obj. ¶ 7. At the November 6 meet and confer, Plaintiffs ultimately agreed to produce some additional responsive documents, which they have not yet produced.

Because Plaintiffs' produced records and documents do not support the amounts claimed, Defendant noticed a Rule 30(b)(6) deposition on November 4, 2026, for November 9, and offered to discuss a mutually agreeable date through either remote

November 8, 2026

or in-person attendance. The next day, Plaintiffs informed Defendant that they will not produce a witness.

## II. Good Cause Exists for Defendant's Requested Relief

**Fact Discovery:** A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "A finding of good cause depends on the diligence of the moving party." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003). That standard is satisfied: Defendant has been diligent, and the November 9 fact discovery deadline cannot be met because of Plaintiffs' conduct.

Defendant has made diligent efforts to press for the necessary discovery at every turn. Despite that diligence, fact discovery cannot be completed by November 9 because Plaintiffs have not produced the documents necessary for Defendant to evaluate the core issues in this case: what, if anything, he owes under the Guaranty. Defendant's liability is limited to the "Guaranteed Obligations,"[1] which incorporate numerous defined terms, many of which turn on the Hotel's financial performance. Yet Plaintiffs have produced incomplete income statements and nothing accounting for the large cash balance they acquired from the Hotel or the proceeds of its subsequent sale.

After reviewing Plaintiffs' initial production, and while settlement discussions were ongoing, Defendant informed Plaintiffs that the production was insufficient to evaluate the claimed amount. Plaintiffs did not adequately supplement voluntarily, so Defendant served targeted requests for production on October 5. Plaintiffs responded on November 5 and withheld responsive documents, citing defective objections.

Plaintiffs' objections confirm that core documents have been withheld. RFP No. 2 sought the documents supporting the $5,327,408.48 claimed in Exhibit K to the Complaint. ECF No. 13-11. Plaintiffs objected that, "[t]o the extent Defendant seeks further backup concerning the precise amount of damages ultimately recoverable," such discovery is "premature and should be addressed, if necessary,

---

[1] "Guaranteed Obligations" is defined as "the payment in full, after application of all Gross Income from Operations generated by the Property for the applicable period, of all Taxes, Insurance Premiums, Other Charges, Operating Expenses, required Reserve Account deposits, interest due and payable on the Loan, any Projected Interest Shortfall due and payable from Borrower in accordance with Section 7.2.4 of the Loan Agreement, and all other operating expenses to the extent not described above, in each case to the extent necessary to own and operate the Property." Guaranty § 1.2. "Guaranteed Obligations" uses capitalized terms defined in the Guaranty or the Loan Agreement, which Defendant has compiled in **Exhibit 3**. *See* Guaranty, Recital D ("All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Loan Agreement.").

following determination of liability." Ex. 2, Resp. to RFP No. 2; *see also id.*, Resp. to RFP No. 3. That objection has no basis. The Court has not bifurcated discovery, and the Scheduling Order sets a single fact discovery deadline for all issues. ECF No. 12 ¶ 7. Where "[n]o bifurcation of liability and damages issues has been ordered," the "parties must comply with that discovery deadline, and defendants certainly have the right to conduct discovery with respect to individual damages in order to prepare for trial." *Krueger v. New York Tel. Co.*, 163 F.R.D. 446, 452 (S.D.N.Y. 1995); *see also Briggs & Stratton Corp. v. Chongqing RATO Power Co.*, No. 5:13-CV-316 LEK/ATB, 2013 WL 5963151, at *6 (N.D.N.Y. Nov. 7, 2013) (describing "the usual burden in civil litigation of conducting discovery with respect to both liability and damage issues."); *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 368 (S.D.N.Y. 2010). Damages are an element of Plaintiffs' claim on which they bear the burden of proof. *Fed. Home Loan Mortg. Corp. v. GW Real Est. Partners, LLC*, No. 26-CV-407 (BMC), 2026 WL 2409382, at *4 (E.D.N.Y. Aug. 18, 2026) ("To establish a claim for breach of an unconditional guaranty, a plaintiff must prove '(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages.'" (quoting *Wells Fargo Bank, N.A. v. 840 Westchester Ave. NMA, LLC*, 786 F. Supp. 3d 586, 598 (S.D.N.Y. 2025))).

These withheld records are also directly responsive to the central question of liability. The Guaranty reaches only certain costs remaining "after application of all Gross Income from Operations generated by the Property for the applicable period." Guaranty § 1.2. Yet Plaintiffs' calculation simply "assume[s]" there is "no available property-level revenue." ECF No. 13-11 at 2. Whether any "Guaranteed Obligations" arose depends on the very records that Plaintiffs have refused to produce. *See White Oak Glob. Advisors LLC v. Clarke*, 793 F. Supp. 3d 490, 496 (S.D.N.Y. 2025) ("[T]he terms of a guaranty are to be strictly construed, and a guarantor should not be found liable beyond the express terms of the guaranty."); *Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Tr. Co. of Chicago*, 93 F.3d 1064, 1073 (2d Cir. 1996).

Closing fact discovery on November 9 would leave these gaps—caused by Plaintiffs' deficient productions—unresolved. Plaintiffs have agreed to make a supplemental production, which is unlikely to arrive until after the close of fact discovery, and the parties cannot cure that by agreement, because joint extensions are permitted only "provided that the parties meet the deadline for completing fact discovery." ECF No. 12 ¶ 8; *see* Fed. R. Civ. P. 29(b). Moreover, once Defendant receives the information, it will take some time to analyze it. For example, the "Gross Income from Operations" and "Operating Expenses" are determined based on GAAP and the Uniform System of Accounts for Hotels, and thus Defendant may need to consult an accounting expert to evaluate whether Plaintiffs' financials were prepared accordingly—so far, Plaintiffs have provided only what appear to be informal accounting records. Plaintiffs also refuse to produce a Rule 30(b)(6) witness, though Defendant noticed that deposition only because Plaintiffs' production did not support the amounts claimed. Defendant does not ask the Court to resolve these potential discovery disputes now because Plaintiffs' forthcoming

production may moot them. But because the Scheduling Order sets no separate deadline for motions to compel, Defendant needs time to review and analyze that production and, if necessary, seek relief on his requests for production or the deposition.

Nor will Plaintiffs suffer any prejudice: this is Defendant's first extension request, no trial date has been set, and the requested extension is modest. And notwithstanding Plaintiffs' desire to move promptly for summary judgment, allowing Defendant to obtain the necessary discovery now will avoid a premature motion on an incomplete record. *See Toussie v. Allstate Ins. Co.*, 213 F. Supp. 3d 444, 445 (E.D.N.Y. 2016) ("[C]ourts routinely deny motions for summary judgment as premature when discovery over relevant matters is incomplete.").

**Expert Discovery:** The Scheduling Order left the deadline for expert discovery to be determined. ECF No. 12 ¶¶ 9-10. Defendant anticipates retaining an accounting expert to analyze and interpret the Hotel's financial records—including its income statements, operating expenses, reserve and cash accounts, and sale proceeds—consistent with hotel industry accounting standards, such as the Uniform System of Accounts for Hotels, to determine whether, and to what extent, any "Guaranteed Obligations" remain after application of "Gross Income from Operations." That analysis cannot meaningfully begin until Plaintiffs complete their production of the underlying requested records. Defendant therefore requests that expert discovery proceed following the close of fact discovery and conclude 60 days thereafter. *See* ECF No. 11 at 3. Alternatively, Defendant respectfully requests that the Court set the expert discovery schedule at the post-fact discovery conference.

## III. Proposed Revised Scheduling Order

For the reasons stated above, Defendant respectfully proposes that the Court enter the proposed Revised Scheduling Order attached as **Exhibit 1** to (1) extend the deadline to complete fact discovery to **January 8, 2027**, which accounts for the upcoming holidays; and (2) set the deadline to complete expert discovery as **March 9, 2027**.

* * *

Respectfully submitted,

SUSMAN GODFREY L.L.P.

/s/ *Harry Susman*
Harry Susman

*Counsel for Defendant*

cc: All Counsel of Record (via ECF)

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

SOUTHERN REALTY TRUST HOLDINGS LLC, SUNRISE REALTY TRUST HOLDINGS I LLC,

Plaintiff(s),

-v-

ROBERTO CASTRO CONTRERAS,

Defendant(s).

-----------------------------------------------------------X

No. 26 Civ. 04240 (RA)

**[PROPOSED]** REVISED
CASE MANAGEMENT PLAN AND SCHEDULING ORDER

RONNIE ABRAMS, United States District Judge:

Pursuant to Rules 16–26(f) of the Federal Rules of Civil Procedure, the Court hereby adopts the following Case Management Plan and Scheduling Order:

1. All parties [consent _____ / do not consent X ) to conducting all further proceedings before a United States Magistrate Judge, including motions and trial. 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. [*If all parties consent, the remainder of the Order need not be completed at this time*.]

2. The parties [have X / have not _____] engaged in settlement discussions.

3. This case [is _____ / is not X ] to be tried to a jury.

4. No additional parties may be joined after August 21, 2026 without leave of the Court.

5. No amendments to the pleadings may be made after August 21, 2026 without leave of the Court.

6. Initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure shall be completed no later than September 4, 2026. [*Absent exceptional circumstances, within fourteen (14) days of the date of the parties' conference pursuant to Rule 26(f)*.]

7. All fact discovery is to be completed no later than January 8, 2027. [*A period not to exceed 120 days unless the case presents unique complexities or other exceptional circumstances*.]

8. The parties are to conduct discovery in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York. The following interim deadlines may be extended by the parties on consent without application to the Court, provided that the parties meet the deadline for completing fact discovery set forth in ¶ 7 above.

   a. Initial requests for production of documents shall be served by October 5, 2026.

   b. Interrogatories shall be served by to be determined.

   c. Depositions shall be completed by January 8, 2027.

   d. Requests to Admit shall be served no later than October 9, 2026.

9. All expert discovery, including disclosures, reports, production of underlying documents, and depositions shall be completed by March 9, 2027. [*The parties shall be prepared to describe their contemplated expert discovery and the bases for their proposed deadlines at the initial conference.*]

10. All discovery shall be completed no later than March 9, 2027.

11. The Court will conduct a post-discovery conference on ____________________________ at _____________. [*To be completed by the Court.*] Unless the parties request otherwise, the Court will hold this conference by telephone. The parties shall use the following dial-in information to call in to the conference: Call-in Number: (855) 244-8681; Meeting ID: 2305 542 4735. This conference line is open to the public. No later than one week in advance of the conference, the parties are to submit a joint letter updating the Court on the status of the case, including but not limited to whether either party intends to file a dispositive motion and what efforts the parties have made to settle the action.

12. Unless otherwise ordered by the Court, the joint pretrial order and additional submissions required by Rule 6 of the Court's Individual Rules and Practices shall be due thirty (30) days from the close of discovery, or if any dispositive motion is filed, thirty (30) days from the Court's decision on such motion. This case shall be trial ready sixty (60) days from the close of discovery or the Court's decision on any dispositive motion.

13. Counsel for the parties propose the following alternative dispute resolution mechanism for this case:

   a. _____ Referral to a Magistrate Judge for settlement discussions.

   b. _____ Referral to the Southern District's Mediation Program. [*Note that all employment discrimination cases, except cases brought under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201* et seq., *are designated for automatic referral to the Court's Alternative Dispute Resolution program of mediation. Accordingly, counsel in such cases should select 13(b).*]

c. _____ Retention of a private mediator.

The use of any alternative dispute resolution mechanism does not stay or modify any date in this Order.

14. The parties have conferred and their present best estimate of the length of trial is _____1-2 days_____.

SO ORDERED.

Dated: ____________________
New York, New York

________________________________
Hon. Ronnie Abrams
United States District Judge

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

SOUTHERN REALTY TRUST HOLDINGS LLC, and SUNRISE REALTY TRUST HOLDINGS I LLC,

Civil Action No. 1:26-cv-04240-RA

*Plaintiffs*,

-against-

ROBERTO CASTRO CONTRERAS,

*Defendant*.

-------------------------------------------------------------------x

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO**
**<u>DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION</u>**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs Southern Realty Trust Holdings LLC ("SRT") and Sunrise Realty Trust Holdings I LLC ("SUNS," together with SRT, "Plaintiffs"), by undersigned attorneys, as and for its Objections and Responses to *Defendant's First Set of Requests for Production*, state as follows:

## <u>GENERAL OBJECTIONS</u>

1. Plaintiffs object to each request to the extent that it seeks information that is neither relevant to the claims made nor reasonably calculated to lead to the discovery of admissible evidence.

2. Plaintiffs object to each request to the extent that it is overly broad, unduly burdensome or vague.

3. Plaintiffs object to each request to the extent that it makes a request for the production of documents that are not within Plaintiffs' possession, custody or control, or inappropriately seeks documents that are already in the possession, custody or control of Defendant.

4. Plaintiffs object to each request to the extent that it seeks information and/or documents that are protected by the attorney-client privilege, attorney work product or any other applicable privilege or immunity.

5. Plaintiffs object to each request to the extent it seeks documents that contain confidential and proprietary information of the Plaintiffs or their clients. Plaintiffs will produce responsive documents that contain such information only upon the Court's entry of an appropriate protective order.

6. Nothing herein is intended to waive the following objections, which are all expressly reserved: (a) objections as to competency, relevancy, materiality and/or admissibility of the subject matter of the discovery requests; (b) objections on any ground as to the use of any information provided in response to the Request; and (c) objections on any ground to any request for further responses to those or other discovery requests.

7. All of the responses herein are subject to and limited by the foregoing General Objections, and documents subject to those objections will not be produced unless otherwise indicated. Plaintiffs' failure to object to a specific request herein does not constitute a waiver of these general objections, which are made as to all of the requests herein to the extent applicable. Further, Plaintiffs' agreement to produce documents responsive to any document requests made as part of this Request does not constitute a representation that such documents exist, or that the documents produced are all of the documents responsive to the requests in the Plaintiffs' possession, custody and control, but only that they have made, and will continue to make a good faith effort to search for and retrieve responsive documents and, subject to any and all of the General and Specific Objections, to produce such responsive documents when and if they are located.

8. Each of these General Objections are incorporated by reference into the following responses.

## SPECIFIC OBJECTIONS AND RESPONSES

**REQUEST NO. 1:**

The native electronic file (including any underlying formulas, linked files, or source data) for the spreadsheet or workbook from which Exhibit K was generated.

**RESPONSE:** In addition to the foregoing General Objections, Plaintiffs object to this Request on the grounds that it seeks information that is not relevant to any party's claim or defense. Subject to the foregoing General and Specific Objections, Plaintiffs, through counsel, will produce the requested electronic file.

**REQUEST NO. 2:**

All documents and communications relating to the preparation, calculation, review, verification, or approval of any amount included in Exhibit K or any draft of Exhibit K.

**RESPONSE:** In addition to the foregoing General Objections, Plaintiffs object to this Request on the grounds that it is overbroad, cumulative, unduly burdensome, and disproportionate to the needs of the case, including insofar as it seeks all drafts and internal communications concerning the preparation, review, verification, or approval of amounts included in Exhibit K. Plaintiffs further object to the extent the Request seeks privileged or work-product material.

Plaintiffs previously produced, with their Initial Disclosures, documents sufficient to support and explain the categories and calculation of their claimed damages, and have subsequently provided additional information in connection with settlement discussions, as to which Plaintiffs reserve all applicable protections. To the extent Defendant seeks further backup concerning the precise amount of damages ultimately recoverable, Plaintiffs submit that such discovery is premature and should be addressed, if necessary, following determination of liability.

**REQUEST NO. 3:**

All documents and communications relating to Your determination in Exhibit K that there is assumed to be no available property-level revenue that can be used to reduce Guaranteed Obligations."

**<u>RESPONSE</u>:** In addition to the foregoing General Objections, Plaintiffs object to this Request on the grounds that it is overbroad and premature. Subject to and without waiving those objections, Plaintiffs previously provided Defendant with information responsive to this Request in connection with settlement discussions. Without waiving any protections applicable to those communications, Plaintiffs will reproduce such information.

**REQUEST NO. 4:**

All documents necessary and sufficient to show Gross Income from Operations, by month, generated by the Property from July 1, 2025 to present, including but not limited to: (a) general ledgers and trial balances for the Property; and (b) monthly, quarterly, and annual income statements and operating statements for the Property, including any statement identifying Gross Income from Operations.

**<u>RESPONSE</u>:** In addition to the foregoing General Objections, Plaintiffs object to this Request as cumulative and duplicative of information already provided. Subject to and without waiving this objection, Plaintiffs previously produced with their Initial Disclosures documents containing the information responsive to this Request. Plaintiffs refer Defendant to those previously produced documents.

**REQUEST NO. 5:**

All documents and communications relating to the 2026 property tax assessment for the Property, including the basis for any valuation used to calculate anticipated 2026 property taxes.

**<u>RESPONSE</u>:** Subject to and without waiving the foregoing General Objections, Plaintiffs respond that they previously produced documents containing information responsive to this Request in connection with their Initial Disclosures. Plaintiffs are producing additional responsive documents herewith.

**REQUEST NO. 6:**

All documents and communications relating to any sale, transfer, or disposition of the Property after the Foreclosure Sale.

**RESPONSE:** In addition to the foregoing General Objections, Plaintiffs object to this Request on the grounds that it is overbroad and unduly burdensome, and that it seeks information that is not relevant to any party's claim or defense. Subject to the foregoing General and Specific Objections, Plaintiffs are producing documents sufficient to demonstrate the consideration received with respect to the sale of the Property after the Foreclosure Sale.

Dated: November 5, 2026
New York, New York

**AKERMAN LLP**

By: /s/ Keith Blackman
Mark S. Lichtenstein, Esq.
Keith Blackman, Esq.
1251 Avenue of the Americas, 37th Floor
New York, NY 10020
Tel. No.: (212) 880-3800
E-mail: mark.lichtenstein@akerman.com
E-mail: keith.blackman@akerman.com

*Attorneys for Plaintiffs*

# EXHIBIT 3

# DEFENDANT'S COMPILATION OF DEFINED TERMS USED IN THE DEFINITION OF "GUARANTEED OBLIGATIONS"

1. "Loan Agreement" is defined as "that certain Loan Agreement, of even date herewith between Borrower and Lender (as the same may be amended, restated, replaced, supplemented, or otherwise modified from time to time)." Guaranty, Recital A.

2. "Gross Income from Operations" is defined as "for any period, all income, computed in accordance with GAAP (and the Uniform System of Accounts for Hotels), derived from the ownership and operation of the Property or any portion thereof from whatever source during such period, including, but not limited to, Rents, utility charges, escalations, forfeited security deposits, interest (if any) on credit accounts and on Reserve Funds, concession fees and charges, business interruption or other loss of income or rental insurance proceeds, service fees or charges, license fees, sums paid from users of parking spaces and other facilities or amenities located on the Property, but excluding (a) other than with respect to Hotel Transactions, Rents from Tenants that (i) are in default under the applicable Lease, (ii) are not in physical occupancy of the applicable leased premises (i.e., have vacated the applicable leased premises) or have otherwise 'gone dark', (iii) have less than six (6) months remaining on the term of the applicable Lease or have a termination option exercisable within six (6) months of the date of determination, (iv) except as set forth above, are then in a free rent period, or (v) are, or whose lease guarantor is, the subject of, or otherwise subject to, a Bankruptcy Action, (b) sales, use and occupancy or other taxes on receipts required to be accounted for by Borrower to any Governmental Authority, (c) refunds and uncollectible accounts, (d) proceeds from the sale of furniture, fixtures and equipment, (e) Insurance Proceeds and Condemnation Proceeds (other than business interruption or other loss of income insurance) payable following a Casualty or Condemnation of all or any portion of the Property, and (f) any disbursements to Borrower from any of the Reserve Funds." Loan Agreement §1.1.

3. "Property" is defined as "the land and improvements thereon described on Exhibit A to the Security Instrument." Guaranty, Recital A.

4. "Taxes" is defined as "all present or future taxes, levies, imposts, duties, deductions, withholdings (including backup withholding), assessments, fees or other charges imposed by any Governmental Authority, including any interest, additions to tax or penalties applicable thereto. In no event shall any PACE Loan be considered Taxes for purposes of this Agreement." Loan Agreement §1.1.

5. "Insurance Premiums" is defined as "all premiums due" under the "Policies." Loan Agreement §6.1(c).

6. "Other Charges" is defined as "all ground rents, maintenance charges, impositions other than Taxes, any 'common expenses' or expenses allocated to and required to be paid by Borrower under any REA and any other charges, including, without limitation, vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Property or any portion thereof, now or hereafter levied or assessed or imposed against the Property or any part thereof." Loan Agreement §1.1.

7. “Operating Expenses” is defined as “as of any date of calculation, the total of all expenditures, computed in accordance with GAAP (and the Uniform System of Accounts for Hotels), of whatever kind relating to the operation, maintenance and management of the Property, which expenditures are incurred on a regular monthly or other periodic basis, including without limitation, utilities, ordinary repairs and maintenance, insurance, license fees, Taxes, Other Charges, advertising expenses, management fees, payroll and related taxes, computer processing charges, operational equipment, tenant improvement and leasing commissions, or other lease payments as approved by Lender, and other similar costs, in each case, for the twelve (12) month period ending with the most recent calendar month reporting. Notwithstanding anything to the contrary in the foregoing, Operating Expenses shall (w) not include depreciation, amortization and other non-cash items, debt service, Capital Expenditures, any contributions to any of the Reserve Funds (except the FF&E Reserve Funds), income taxes or other taxes in the nature of income taxes on sales, or use taxes required to be paid to any Governmental Authority, equity distributions, and other extraordinary and non-recurring items, and legal or other professional services fees and expenses unrelated to the operation of the Property, (x) be increased to reflect known increases in Operating Expenses that are anticipated, in Lender’s reasonable determination, to occur within the succeeding twelve (12) month period including without limitation those related to Property Taxes and Insurance Premiums, (y) include the greater of (I) the actual fees paid to the each of the Manager and Manager (Parking) pursuant to the Management Agreement and Management Agreement (Parking) respectively, for such period of determination and (II) an amount equal to three percent (3%) of Gross Income from Operations for such period for each of the Manager and Manager (Parking), and (z) imputed capital improvement/FF&E expenditures amount equal to the amount required to be deposited under Section 7.2 (whether into the FF&E Reserve Account or pursuant to the Hotel Management Agreement, or any appliable franchise agreement or each of them as may be applicable). Operating Expenses shall also include all franchise fees and expenses incurred in connection with the any franchise agreement and all other expenses not otherwise specifically referred to in this definition which are referred to as ‘Administrative and General Expenses’ in the Uniform System of Accounts for Hotels. Notwithstanding anything to the contrary contained herein, Lender shall have the right to adjust the calculation of Operating Expenses retroactively in connection with any adjustment of the franchise fees under any applicable franchise agreement pursuant to the terms thereof. Notwithstanding anything to the contrary contained herein, in no event shall asset management fees constitute Operating Expenses.” Loan Agreement §1.1.

8. “Reserve Accounts” is defined as “collectively, the Tax and Insurance Escrow Account, the FF&E Reserve Account, the Interest Shortfall Reserve Account, the Required Repairs Account, the Excess Cash Reserve Account, the Net Proceeds Account and any other escrow or reserve account established pursuant to the Loan Documents.” Loan Agreement §1.1.

9. “Loan” is defined as “a loan . . . made pursuant to that certain Loan Agreement, of even date herewith between Borrower and Lender.” Guaranty, Recital A.

10. “Projected Interest Shortfall” is defined as “the amount determined by Lender in its reasonable discretion to be necessary to pay all Interest Shortfalls (with the Term SOFR,

Prime Rate or Substitute Index portion of such Interest Rate, as applicable, calculated using the forward Term SOFR curve (or forward Prime Rate or Substitute Index curve, if applicable) then in effect as promulgated by Chatham Financial or, if such forward curve is not available from Chatham Financial, then the forward curve then in effect as promulgated by Bloomberg or another source selected by Lender, and after taking into account the then balance of the Interest Shortfall Reserve Account) through and including the then applicable Maturity Date (i.e., the Stated Maturity Date, the First Extended Maturity Date, or the Second Extended Maturity Date, as applicable).” Loan Agreement §1.1.

11. “Interest Shortfall” is defined as “as of any Payment Date (whether or not a Cash Trap Period is in effect), the positive difference between (x) the amounts needed on such Payment Date to make the Monthly Debt Service Payment Amount, minus (y) the amount of Rents available in the Cash Management Account on such Payment Date to make such payments, after taking into account the priority of payment in Section 2.7.2(b) (and, if no Cash Trap Period is in effect, assuming the application of all Rents received during such month on such Payment Date pursuant to Section 2.7.2(b)), each as determined by Lender.” *Id.*

12. “Borrower” is defined as “LEX AVENUE HOTEL, LLC, a Delaware limited liability company (together with its permitted successors and assigns).” Guaranty, Recital A.